IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RITA RAWLS CARNLEY STANLEY, ) ) | |
| Plaintiff, ) ) | |
| v. ) ) ) | Civil Action No. 2:18-cv-871-JTA (WO) |
| ANDREW SAUL, ) Commissioner of Social Security, ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), the claimant, Rita Rawls Carnley Stanley[1] brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[2] The Commissioner denied Stanley's claim for a period of disability and for Disability Insurance Benefits ("DIB"). (*Id*.) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 10, 11.)

Based upon review of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be AFFIRMED.

---

[1] Though the Complaint in this case (Doc. No. 1) refers to the plaintiff as "Rita Rawls Carnley Stanley," the decision of the Administrative Law Judge and Plaintiff's brief refer to her as "Rita Rawls Stanley Carney" (Doc. No. 13). For consistency, the Court refers to the plaintiff hereinafter as "Stanley."

[2] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

## I. PROCEDURAL HISTORY AND FACTS

Stanley was born on July 26, 1963, and was 53 years old at the time of the administrative hearing held on June 20, 2017. (R. 20.)[3] She has a high school education (R. 225) and has previously worked as a hospital admission clerk and home health aide (R. 20). Stanley alleges a disability onset date of September 5, 2014, due to fibromyalgia, depression, and degenerative disc disease. (R. 224, 248.)

On June 23, 2015, Stanley protectively filed an application for DIB based on disability under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. (R. 223-30.) The application was denied (R. 112-13), and Stanley requested an administrative hearing (R. 136-37).

Following an administrative hearing, the Administrative Law Judge ("ALJ") denied Stanley's request for benefits in a decision dated November 20, 2017. (R. 10-22.) On August 22, 2018, the Appeals Council denied Stanley's request for review. (R. 1-3.) Therefore, the hearing decision became the final decision of the Commissioner. On October 10, 2018, Stanley filed the instant action appealing the decision of the Commissioner. (Doc. No. 1.)

## II. STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

---

[3] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (Docs. No. 15, 19.)

"The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id*. at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210 (11th Cir. 2002). However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

### III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security disability benefits must prove that she is disabled. *See* 20 C.F.R. § 404.1505 (2012). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that she is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that

the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV.   ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Stanley has not engaged in substantial gainful activity since the alleged onset date of disability, September 5, 2014, and she suffers from the following severe impairments that significantly limit her ability to perform basic work activities: depressive disorder; a generalized anxiety disorder; degenerative disc disease and osteoarthritis of the cervical spine, and to a much lesser extent, the lumbar spine. (R. 13.) The ALJ also found that Stanley suffered from fibromyalgia, which is "nonsevere at best," and bladder instability, which was "nonsevere." (R. 14.) The ALJ concluded however that Stanley's severe impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

After consideration of the entire record, the ALJ determined that Stanley retains the RFC to perform a range of light work[4] as defined in 20 C.F.R. § 404.1657(b), but not a "full range" of such work. (R. 15). The ALJ found Stanley had the following limitations:

> she cannot climb ladders, ropes, or scaffolds and can just occasionally climb stairs, stoop, kneel, crouch, or crawl. She can do no overhead reaching, but can frequently reach in all other directions, including at or below shoulder level. She cannot work at unprotected heights and should avoid more than very occasional exposure to workplace hazards. She can sit for two hours at a time, six or more hours a day. She can stand for one hour at a time. She can walk for 30 minutes at a time. She can stand and walk in combination about six hours a day. She is mentally limited to performing simple routine tasks inherent to unskilled work involving simple, short instructions. She can make occasional simple decisions when in the workplace; and she can tolerate no greater than occasional workplace changes. She can have only casual, occasional contact with the public, meaning she can work in the presence of the public but not more than a casual action with the public.

(R.15.)

Following the testimony of the Vocational Expert ("VE"), the ALJ determined that Stanley was precluded from performing any of her past relevant work as actually or generally performed. (R. 20.) The ALJ also concluded that Stanley was not disabled as defined by the Act because her age, education, work experience, and RFC would have allowed her to make a "successful adjustment to other work that exists in significant numbers in the national economy." (R. 21-22.) The ALJ further concluded that Stanley

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities . . . ." 20 C.F.R. § 404.1657(b).

had not been under a disability from September 5, 2014, through the date of the ALJ's decision. (R. 22.)

## V. DISCUSSION

Stanley advances two arguments for reversing the ALJ's decision. First, Stanley argues the ALJ failed to properly apply the three-part pain standard applicable in the Eleventh Circuit. (Doc. No. 13 at 4-7.) Second, Stanley argues the ALJ failed to properly consider her headaches as a severe impairment. (*Id*. at 7-9.) After careful review, the court concludes the ALJ's findings are supported by substantial evidence and the ALJ's decision is in accordance with applicable law. The court evaluates each of Stanley's arguments below.

A. The ALJ properly applied the pain standard.

Stanley argues that the ALJ failed to properly apply the three-part pain standard; did not articulate specific reasons to discredit her testimony regarding the intensity, persistence and limiting effects of her symptoms; and improperly relied upon the consulting opinion of a State agency physician to find that she is not disabled. (Doc. No. 13 at 6-7.) The Commissioner responds that substantial evidence supports the ALJ's determination. (Doc. No. 14 at 5.)

"In order to establish a disability based on testimony of pain and other symptoms, [Stanley] must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225

7

(11th Cir. 2002) (citation omitted). "If an ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Id.* (citation omitted). "The credibility determination does not need to cite 'particular phrases or formulations' but it cannot merely be a broad rejection which is 'not enough to enable [the district court] to conclude that [the ALJ] considered [a claimant's] medical condition as a whole.' " *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).

Stanley testified that she was unable to work due to her neck and back pain. (R. 52.) Stanley also testified that she has bulging discs in her lower back, arthritis and screws in her neck, and degenerative disc disease in her neck. (R. 53.) She testified that she had neck surgery in 2009, returned to work, and then began suffering back pain. (R. 54-55.) Stanley testified that she is able to drive, uses the internet, and is able to use her right hand and arm more easily than her left. (R. at 60-61.) She attributed her problems with her right hand to occasional arthritis. (*Id.* at 64.) Stanley testified that she suffers migraine headaches which occur occasionally or not at all when she takes Topamax. (*Id.* at 57, 62.) She sits for most of the day and naps for about three hours when she experiences drowsiness. (*Id.* at 63.) Her pain and depression frequently distract her from following television programs. (*Id.*) She reported to a health provider that she gets upset that her husband cannot "keep up" with her activity level. (*Id.* at 559.)

The ALJ found that Stanley's complaints regarding the intensity, persistence and limiting effects of her symptoms were not consistent with the medical evidence and other evidence in the record. (R. 17, 19.) Although the ALJ did not explicitly state that he

8

discredited Stanley's subjective complaints of pain, he cited 20 C.F.R. § 404.1529 – the pain standard – in his discussion (R. 15), he set forth the analysis for subjective pain testimony (R. 16),[5] and he found that Stanley's "medically determinable impairments could reasonably be expected to cause only some of her alleged symptoms" and her statements concerning her symptoms were not "especially consistent with the medical evidence and other evidence in the record, nor are they very persuasive" (R. 17).

The objective medical evidence supports the ALJ's conclusion. Dr. Timothy Haley performed Stanley's discectomy and fusion with instrumentation and allograft in February of 2009, five years prior to her alleged disability onset date of September 5, 2104. (R. 289-91.) Stanley reported stiffness and tenderness in her neck during Dr. Haley's post-operation examination which showed an intact and normal spinal fusion. (*Id*. at 293.) Two months after the surgery, Stanley reported worsening pain and tenderness along the left

---

[5] Specifically, the ALJ noted in his decision the following:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

(R. 16.)

side of her neck. (*Id*. at 292.) Dr. Haley wrote that he did not believe the tenderness would produce any long-term disability. (*Id*.) Stanley told the ALJ that she experienced improvement in her neck following the surgery and that Dr. Haley told her the surgery would need to be repeated, though as of the hearing date, eight years after the surgery, her pain was "not bad enough to have another surgery but down the road it's going to happen again."[6] (*Id*. at 55; 61-62.)

In addition, treatment records related to Stanley's complaints of back and neck pain from 2008 through March of 2017 are unremarkable. Dr. Kevin Diel found that Stanley's neck pain was well controlled on Norco and a cervical x-ray displayed hardware that appeared intact. (*Id*. at 482.) In February 2017, Miranda Wiggins, Nurse Practitioner, referred Stanley to physical therapy for her general conditions, including body aches, but the record does not indicate that Stanley attended more than one of her four appointments. (*Id*. at 590-92.) On March 1, 2017, Stanley was in a motor vehicle accident and presented to Wiggins with neck pain one week later. (*Id*. at 611.) Wiggins recommended a conservative course of treatment of ice and Naproxen, with a referral to Dr. Haley. (*Id*. at 613.) A post-accident lumbar MRI revealed mild degenerative changes to the lower lumbar spine with a mild leftward curve and a disc bulge at L4-L5. (*Id*. at 597.)

During a second post-accident examination in March 2017, Stanley told Dr. Haley that she was experiencing neck and arm pain. (*Id*. at 598.) Dr. Haley noted that he had seen Stanley for similar complaints prior to the accident and that he could not comply with

---

[6] The hearing transcript in this testimony passage shows the physician's name as "Dr. Haiti," rather than "Dr. Haley."

her request to attribute the pain to the accident. (*Id*.) He noted that her neck displayed good range of motion with good strength throughout her upper extremities, with no focal deficits and no pain with gentle range of motion of the hips, knees, or ankles. (*Id*.) A lumbar x-ray revealed good alignment of the spine in sagittal and coronal plane with good maintenance of all disk spaces. (*Id*.) Dr. Haley diagnosed chronic cervical and lumbar pain that was somewhat worse after the accident and administered intramuscular Depo-Medrol and Toradol shots for her neck and back, with recommendations for physical therapy and a series of epidurals. (*Id*.) Stanley was also examined for her complaints of cervical spine pain, but a CT scan showed no abnormalities. (*Id*.)

In addition to the records from Stanley's treating physicians, the record includes an examination report from a state agency consultative source. In October of 2015, Dr. Caleb Yongkuma, M.D., found Stanley well-developed, well-nourished, in no apparent distress, and noted no deformities or abnormalities. (*Id*. at 498-99.) Dr. Yongkuma found Stanley's motor strength, sensation and grip to be normal. (*Id*. at 499.) The ALJ explained that he gave the State agency opinion partial weight because it was somewhat consistent with treatment records which indicated that Stanley's neck pain was controlled with medication. (*Id*. at 17, 19.)

In contrast, a clinical assessment in December of 2016 determined that Stanley's pain would distract from adequate performance of daily activities or work and could also cause her to totally abandon tasks. (*Id*. at 501.) The assessment also concluded that the side effects from Stanley's prescribed medications are severe and limit effectiveness due to drowsiness. (*Id*.) The ALJ noted that it was unclear whether the approving physician,

Steve Davis, D.O., personally examined Stanley, or whether a nurse practitioner performed the clinical pain assessment examination. (*Id*. at 20.) The ALJ noted that the two-page pain assessment did not include a treatment history with specific medical findings and clinical tests to support the conclusions of intense and persistent disabling pain. (*Id*. at 18, 20.) This assessment was given partial weight by the ALJ pursuant to agency policy that nurse practiners are not acceptable medical sources for purposes of disability evaluations. (*Id*. at 20.)

Stanley emphasizes that her complaints of pain continue "despite pain management treatment with pain medications . . ." and asks the court to find that the ALJ improperly relied upon the opinion of the state consulting physician to reject her testimony. (Doc. No. 13 at 6.) However, this consulting opinion was accepted by the ALJ to the extent that it was consistent with those from Stanley's treating physicians and was not used to discount her pain testimony. (R. at 19.) The ALJ provided substantial citations to treatment records from Drs. Haley and Diel to reach his conclusion that Stanley's testimony was not supported by the record. "The opinion of a treating physician's opinion must be given substantial or considerable weight unless good cause is shown not to do so." *Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 879 (11th Cir. 2019) (citing *Phillips*, 357 F.3d at 1240). Here, treating physician Dr. Haley stated that he did not expect any long-term disability to result from Stanley's neck surgery in 2009, and though the surgery may one day be repeated, she had not reached that point as of the date of her disability hearing. (R. 292, 55.) Treating physician Dr. Diel found that Stanley's neck pain was well controlled and improved while taking Norco. (*Id*. at 17, 482.) The consulting opinion from the state

agency physician, Dr. Yongkuma, was cited primarily for its findings that were consistent with those from Stanley's treating physicians, notably the reports of no abnormalities or deformities in her back, with normal motor strength, sensation and grip. (*Id*. at 18, 19.) Also, the ALJ only gave this opinion evidence partial weight. (*Id*. at 19.) As such, the court does not find that the ALJ improperly relied upon the consulting opinion, but rather that the findings regarding the management of Stanley's pain and lack of disability are taken directly from the records of her treating physicians.

Upon reviewing the objective medical evidence in the record, the court concludes that substantial evidence exists to support the ALJ's conclusion regarding Stanley's subjective complaints of pain. Objective medical evidence supporting the extent of Stanley's complaints of pain has not been established. The medical records from Stanley's treating physicians do not support her testimony of disabling pain. The ALJ sufficiently contrasted Stanley's testimony with treating records which indicated that her pain was not disabling, and it is obvious to this court that the ALJ considered her medical condition as a whole in discounting her testimony. *Dyer*, 395 F.3d at 1210. Therefore, the court finds that the ALJ's determination that Stanley's testimony of disabling pain was not credible is supported by the record. Because the treating opinions relied upon by the ALJ are entitled to substantial weight in the disability determination, the ALJ's decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178.

B. The ALJ properly considered Stanley's headaches.

Stanley asserts the ALJ committed reversible error by failing to find that, based on the medical evidence, her headaches are a severe impairment within the meaning of Social

Security Ruling (SSR) 96-3p.  (Doc. No. 13 at 7 (citing SSR 96-3p, 1996 WL 374181 at *1.))  The Commissioner responds that the ALJ correctly excluded headaches as a severe impairment at Step Two because Stanley's application for benefits did not allege disability due to headache, her entire medical condition was considered by the ALJ, and she failed to establish that her headaches qualify as a severe impairment.  (Doc. No. 14 at 11-13.)

The court finds substantial evidence supports the ALJ's decision.  Stanley was questioned by the ALJ about her use of Topamax for headaches.  (R. 57.)  Though she first testified "I have migraines every day," Stanley later acknowledged that since taking Topamax three times daily her headaches occurred "every once in a while."  (*Id*.)  In addition, under questioning by counsel, Stanley again testified that before taking Topamax she had headaches every day, but as of the hearing date "I don't [have headaches] with the Topamax.  The Topamax helps me not have them."  (*Id*. at 62.)

Moreover, as the Commissioner properly argues, the ALJ was not required to consider the limitations posed by Stanley's headaches because she did not allege them as a basis for disability.  *See Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (an ALJ is not required to investigate a claim not presented in a disability application or offered at the hearing as a basis for disability).  The record shows that Stanley's application for benefits alleged disability due to fibromyalgia, depression and degenerative disc disease. (R. 57-58, 62, 224, 248.)  Stanley also did not reference headaches in a pain questionnaire she completed in July 2015, or during her October 2015 examination by the state expert. (R. 232-33, 497.)  Nor did Stanley assert that her headaches were a reason she was unable

to complete her past work during the administrative hearing. (R. 52) (Q: "So what led you to not be able to [complete your past work]? A: My neck and back.")

Further, Stanley's attempt to salvage her claim of disability due to headaches by asking the court to consider the drowsiness she suffers as a side effect of the nausea medication she uses for "breakthrough" headaches is unpersuasive. (*See* Doc. No. 13 at 8-9.) The record belies this assertion as Stanley denied problems with side effects during appointments with the health provider who managed her headaches in January and April of 2016. (R. 559, 561.) Regardless of the drowsiness allegedly induced by the nausea medication that Stanley takes "every once in a while," the ALJ was required to – and did in fact – consider her entire medical condition – including severe and non-severe conditions – as required after the administrative review progressed past Step Two in the agency's sequential evaluation process. *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902-03 (11th Cir. 2011). Accordingly, substantial evidence supports the ALJ's findings.

## VI. CONCLUSION

After review of the administrative record, and considering all of Stanley's arguments, the Court finds the Commissioner's decision to deny Stanley disability is supported by substantial evidence and in accordance with the applicable law. Accordingly, it is hereby

ORDERED that the decision of the ALJ is **AFFIRMED**.

A separate judgment will be issued.

DONE this 24th day of February, 2021.

                                                /s/ Jerusha T. Adams
                                               JERUSHA T. ADAMS
                                               UNITED STATES MAGISTRATE JUDGE